**HOVHANNISYAN; et al., Petitioners,**

v.

**Michael B. MUKASEY, Attorney General, Respondent.**

**Violeta Hovhannisyan; et al., Petitioners,**

v.

**Michael B. Mukasey, Attorney General, Respondent.**

**Nos. 05–70934, 05–75023.**

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 21, 2008.*

Filed Dec. 15, 2008.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Artem M. Sarian, Esq., Attorney at Law, Glendale, CA, for Petitioners.

NVL–District Counsel, Office of the District Counsel, Department of Homeland Security, Las Vegas, NV, Ronald E. Lefevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Sam E. Taylor, Federal Deposit Insurance Corporation, Dallas, TX, for Respondent.

Before HALL, T.G. NELSON, and THOMAS, Circuit Judges.

### MEMORANDUM **

Violeta Hovhannisyan, a native of Iran and citizen of Armenia, and her daughter Meline Vardanyan, a native and citizen of Armenia, petition for review of the Board of Immigration Appeals's (BIA) decisions (1) affirming the Immigration Judge's (IJ) denial of their consolidated applications for asylum, withholding of removal, and protection under the Convention Against Torture, and (2) denying their subsequent motion to reopen immigration proceedings. Where, as here, it is unclear whether the BIA conducted de novo review of the IJ's oral decision, we may look to the IJ's decision "as a guide to what lay behind the BIA's conclusion." *Ahmed v. Keisler,* 504 F.3d 1183, 1191 (9th Cir.2007). "We review for substantial evidence the decision that an applicant has not established eligibility for asylum." *Id.*

Assuming the credibility of both Hovhannisyan and Vardanyan,[1] we take as true the following instances of violence, torture, and harassment suffered by them as a result of their imputed nationality and religious beliefs: (1) in January of 1990, uniformed Fedayeen soldiers forcibly entered Petitioners' home, attacked Petitioners, and caused Hovhannisyan to suffer a bloodied nose; (2) in October of 1991, police arrested, tortured, and detained Hovhannisyan for nine hours after she complained to school officials that one of her daughters had been beaten at school, resulting in Hovhannisyan moving her family to Russia to escape the perceived dangers in Armenia; (3) in or around 1992 or 1993, and apparently after the family returned to Armenia, students knocked Vardanyan unconscious with a rock, after which the students poured water on Vardanyan's head and laughed at her; (4) in April of 1995, uniformed Fedayeen soldiers violently broke up a Charasmatic Christianity meeting attended by both Hovhannisyan and Vardanyan, during which the soldiers tore up books, broke Hovhanni-

---

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. The BIA assumed Petitioners' credibility because the IJ failed to make an explicit credibility determination. *See Mansour v. Ash-croft,* 390 F.3d 667, 671–72 (9th Cir.2004) (noting that the Court must assume Petitioners' factual contentions are true in the absence of an explicit adverse credibility determination).

syan's rib, caused a cut to Vardanyan's head, and arrested Hovhannisyan's husband and detained him for three days; (5) in May of 1996, students beat Hovhannisyan's daughter Armine at school for preaching about Charismatic Christianity, resulting in the family's second move to Russia to escape perceived dangers in Armenia;[2] (6) in the winter of 1996, unknown persons threw Hovhannisyan off a bus, and Hovhannisyan suffered a twisted ankle and a cut; and (7) in 1998, uniformed Fedayeen soldiers attempted to kidnap and murder one of Hovhannisyan's daughters.

The BIA erred in considering Petitioners' experiences of violence, torture, and harassment separately—according to whether the instances resulted from Petitioners' imputed nationality or religion—as opposed to cumulatively, as required by law. *See Ahmed,* 504 F.3d at 1192; *see also Zhang v. Gonzales,* 408 F.3d 1239, 1249 (9th Cir.2005) (noting that acts of violence against family members and close associates can suffice to establish a well-founded fear of persecution); *Korablina v. INS,* 158 F.3d 1038, 1044 (9th Cir.1998) ("The key question is whether, looking at the cumulative effect of all the incidents a petitioner has suffered, the treatment she received rises to the level of persecution."); *Baballah v. Ashcroft,* 367 F.3d 1067, 1077 (9th Cir.2004).

Furthermore, after cumulatively reviewing the record evidence of persecution, we conclude that "the cumulative effect of the harms is severe enough that no reasonable fact-finder could conclude that it did not rise to the level of persecution." *Ahmed,* 504 F.3d at 1194; *see also Korablina,* 158 F.3d at 1044–45 (rejecting IJ's characterization of Korablina's experiences as mere discrimination, where she was robbed, attacked, threatened with death, and tied to a chair with a noose around her neck); *Nuru v. Gonzales,* 404 F.3d 1207, 1225 (9th Cir.2005) (noting that torture is generally sufficient to establish past persecution).

In light of our finding of past persecution, the petition for review is granted, and the case hereby remanded to the BIA for proceedings consistent with this memorandum disposition. Petitioners' challenge to the BIA's denial of the motion to reopen is denied as moot.

**Petition GRANTED; REMANDED.**

---

**2.** This move too was temporary.

